## S01A0282. SINGELMAN v. SINGELMANN et al.

(548 SE2d 343)

HINES, Justice.

This is an appeal by propounder Michael Singelman from the probate court's refusal to grant a new trial or to set aside its order denying Singelman's petition to probate the purported last will and testament of his father, Oliver Pierce Singelmann. For the reasons which follow, we reverse and remand.

On May 5, 1999, Singelman filed a Petition to Probate Will in Solemn Form for a will executed by his father on September 13, 1997; the father died on October 17, 1998. The will bore the signature of two witnesses and contained a notarized affidavit by the testator and the witnesses that the will was executed freely and voluntarily and that the testator was at least 18 years old, of sound mind, and under no constraint or undue influence. Also, attached to the will was an affidavit by a licensed clinical social worker, stating that she had evaluated the decedent on the day before he signed the will and was of the opinion that the decedent was oriented to time and place, capable of understanding the nature and extent of his assets, and clear as to the meaning and contents of the will he was executing. On May 10, 1999, the witnesses' executed interrogatories were filed with the probate court. The interrogatories affirmed the signatures of the witnesses and the testator, the witnessing of the execution of the will, that the will was executed voluntarily, and that at the time of execution, the testator appeared to be of sound mind.

Caveats were filed by three of the decedent's other children. The caveators alleged that Singelman subjected their father to undue influence through verbal and physical abuse and that their father lacked the capacity to execute the will; one of the caveators also objected that the witnessing of the will by one of the witnesses was "suspect."

Following a hearing, on February 1, 2000 the probate court entered a final order denying Singelman's petition to probate the will.[1] In so doing, the court found that the purported self-proving will would give propounder Singelman a life estate in all of his father's assets, and after Singelmann's death, the assets would distribute equally to the decedent's four other children.[2] However, it cited the fact that the only witness testifying for propounder Singelman was Singelman himself. Relying on OCGA § 53-5-21 and *Miller v. Miller*, 104 Ga. App. 224 (121 SE2d 340) (1961), the court concluded, as a

---

[1] One of the caveators did not appear at the hearing in the matter, and the court dismissed his caveat.

[2] The court found that decedent's assets included his home valued at approximately $90,000 and stock accounts valued at approximately $110,000.

matter of law, that unless the caveator has admitted a prima facie case in favor of the propounder, the propounder must produce the testimony of all the attesting witnesses in life and within the jurisdiction of the court. The court stated that Singelman failed to present any witnesses to the will or any evidence that such witnesses were unavailable; that the failure to present the witnesses denied the caveators an opportunity to cross-examine the witnesses; that without such opportunity for cross-examination, the court's reliance on the witness affidavits submitted with the petition to probate would be "unjust"; and therefore, that the will was not sufficiently proved as validly executed.

The court further concluded that propounder Singelman also failed to prove that the testator had the capacity to make a will, but that the evidence was insufficient to support a finding of invalidity of the will because of undue influence. The court denied probate stating that it did so "for failure to produce the required witnesses and for failure to establish the validity of the [w]ill by a preponderance of the evidence." Subsequently, the court denied Singelman's motion for new trial or to set aside the order denying probate, expressly affirming its determination that the presence of the subscribing witnesses to the will was required. But the court's determination was in error.

1. The propounder of a will has the burden of establishing a prima facie case, which includes showing the fact of the will, that at the time of its execution the testator apparently had sufficient mental capacity to make it, and in making it, the testator acted freely and voluntarily. *Skelton v. Skelton*, 251 Ga. 631, 632 (2) (308 SE2d 838) (1983). See also *Pendley v. Pendley*, 251 Ga. 30, 31 (2) (302 SE2d 554) (1983). This burden of initially demonstrating the testator's sanity and freedom has been described as "more in the nature of ballast than of cargo. It is just enough to sail with – no more." *Ehlers v. Rheinberger*, 204 Ga. 226, 228 (49 SE2d 535) (1948), quoting *Thompson v. Davitte*, 59 Ga. 472, 475 (2) (1877). When this has been done, the burden of proof shifts to the caveator. *Skelton v. Skelton*, supra at 632 (2). See *Heard v. Estate of Lovett*, 273 Ga. 111 (1) (538 SE2d 434) (2000) for a discussion of "burden of proof" with regard to propounder and caveator.

The court characterized the will offered by Singelman as self-proving.[3] See OCGA § 53-4-24; *Hickox v. Wilson*, 269 Ga. 180 (496 SE2d 711) (1998). When a will is self-proved, it "may be admitted to probate without the testimony of any subscribing witness." OCGA

---

[3] OCGA § 53-4-24 (b) sets forth the affidavit and certificate prerequisites for a self-proved will or codicil.

§ 53-4-24 (c). In fact, compliance with the requirements of execution are presumed without the live testimony or affidavits of witnesses; that is, the affidavit creates a presumption regarding the prima facie case, subject to rebuttal. OCGA § 53-5-21 (a).[4] Even in the case of a will that is not self-proved, witnesses to the will may be examined in person, by written interrogatories, or by other discovery procedures, as in other civil cases. OCGA § 53-5-23 (a).[5] The taking of testimony in the manner prescribed by statute is sufficient for all purposes in the probate proceeding. OCGA § 53-5-23 (c).[6] Personal appearances of the witnesses are not required, and the probate court's reliance on *Miller v. Miller* for such proposition was misplaced. See *Norton v. Ga. R. Bank &c. Co.*, 248 Ga. 847, 848 (1) (285 SE2d 910) (1982).

Assuming that the will in this case was not self-proved, propounder Singelman still set forth a prima facie case; he provided the witnesses' interrogatories, which affirmed the voluntary execution of the will by the testator and that he appeared to be of sound mind. Although the probate court concluded that the will was not sufficiently proved as validly executed, it does not cite any factual basis for this conclusion other than that the witnesses were not physically in court and Singelman failed to demonstrate that they were unavailable. There is no finding whatsoever that the caveators produced evidence to rebut the propounder's prima facie showing that the will was validly executed.[7]

---

[4] OCGA § 53-5-21 (a) provides:
A will may be proved in solemn form after due notice, upon the testimony of all the witnesses in life and within the jurisdiction of the court, or by proof of their signatures and that of the testator as provided in Code Section 53-5-23. The testimony of only one witness shall be required to prove the will in solemn form if no caveat is filed. If a will is self-proved, compliance with signature requirements and other requirements of execution is presumed subject to rebuttal without the necessity of the testimony of any witness upon filing the will and affidavit annexed or attached thereto.

[5] OCGA § 53-5-23 (a) provides:
In all proceedings for the probate of a will in common form or solemn form, witnesses to the will may be examined in person or by written interrogatories which shall be answered in writing and under oath before a notary public or by depositions or other discovery procedures under the same circumstances as other civil cases.

[6] OCGA § 53-5-23 (c) provides:
The provisions of this Code section shall not be construed as repealing any other statutory provision prescribing a method or procedure for the taking of testimony by interrogatories or depositions, but supplementary of such other provisions and cumulative to such other provisions . . . [t]he taking or procuring of testimony in the manner prescribed by this Code section shall be sufficient for all purposes of the probate proceedings.

[7] The transcript of the hearing on the motion for new trial or to set aside reveals that the hearing on the validity of the will was not reported. Consequently, as counsel pointed out to the probate court, the only evidentiary showing regarding the validity of the will is to be found within the court's order denying probate.

The probate court's conclusion about the sufficiency of the propounder's showing that the testator had the capacity to make a will is equally problematic. First, it is unclear whether the court is concluding that the prima facie case in regard to capacity has been successfully rebutted or whether the caveat on the basis of lack of capacity has been proven. If the conclusion goes to the merits of the caveat, it was the caveators', and not the propounder's, burden to affirmatively prove the testator's lack of capacity. See *Skelton v. Skelton*, supra at 632 (2); *Cornelius v. Crosby*, 243 Ga. 26, 27 (5) (252 SE2d 455) (1979). In either event, the court's conclusion cannot be sustained. The stated bases for such conclusion are that the caveators presented evidence that the testator was not aware of the full extent of his assets in that he misunderstood his monthly income; that the testator had difficulty hearing and could not read fine print; and that the testator "may not have been fully aware of what he was signing." The statement about the testator's awareness is merely speculative. And the fact that the then 91-year-old testator had some hearing and sight impairment and did not know his exact income and assets falls well short of demonstrating the lack of testamentary capacity. "'A person may be unable to transact business, or even lack the mental capacity to contract, and may still have sufficient capacity to make a will.'" *Pope v. Fields*, 273 Ga. 6, 9 (2) (536 SE2d 740) (2000), quoting *Wood v. Lane*, 102 Ga. 199, 201 (29 SE 180) (1897). Indeed, advanced age and weakness of intellect do not amount to incapacity, for testamentary capacity is that which is necessary to give the testator a deciding and rational desire about the disposition of the testator's property. *Sullivan v. Sullivan*, 273 Ga. 130, 132 (2) (539 SE2d 120) (2000).

Accordingly, the denial of the propounder's motion for new hearing or to set aside is reversed, and the case is remanded to the probate court for consideration consistent with this opinion.

2. Our decision in Division 1 makes it unnecessary to address Singelman's remaining contention of error regarding the probate court's refusal to allow certain witnesses at the hearing on his motion for new trial or to set aside.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED JUNE 11, 2001.

*David Lebowski*, for appellant.
*Garner & Still, James W. Garner*, for appellees.