## S11A1537. PARKER v. KELLEY.

(721 SE2d 828)

CARLEY, Presiding Justice.

Mabel Frances White (Testatrix) died while domiciled in Fulton County. She was not married and had no children. Testatrix had four predeceased siblings, and Virginia Crawford Kelley (Propounder) and Phillip Harold Parker (Caveator) are two of five nieces and nephews who are Testatrix's heirs at law. On July 7, 2010, Propounder, the named executor of the will of Testatrix, filed a petition to probate the will in solemn form. On August 11, 2010, Caveator filed a caveat to the petition contending that the will should be declared void as Testatrix lacked testamentary capacity at the time of its execution. After a failed mediation conference, a hearing was held, and on March 2, 2011, the probate court admitted the will to probate, holding that Propounder carried her burden of proving that the proffered will was the last will and testament of Testatrix and that Testatrix possessed the required testamentary capacity to make a will at the time of execution. Caveator appeals from the probate

court's order.

> The propounder of a will has the burden of establishing a prima facie case, which includes showing the fact of the will, that at the time of its execution the testator apparently had sufficient mental capacity to make it, and in making it, the testator acted freely and voluntarily. [Cits.]

*Singelman v. Singelmann*, 273 Ga. 894, 895 (1) (548 SE2d 343) (2001). "[O]nce the propounder establishes a prima facie case, the burden of proof shifts to the caveators. . . ." *Bryan v. Norton*, 245 Ga. 347, 349 (2) (265 SE2d 282) (1980). This Court will not set aside the probate court's factual findings unless they are clearly erroneous, meaning that they will be upheld if there is any evidence to sustain them. *Patel v. Patel*, 285 Ga. 391, 392 (1) (a) (677 SE2d 114) (2009).

In the order issued March 2, 2011, the probate court made the following findings of fact:

> [Testatrix] lived at Kings Bridge Retirement Center at the time of execution and later moved to the Mann House, an assisted living facility due to her inability to walk to the dining area. Although [Testatrix] suffered from a bad knee and had difficulty walking, she was very independent and made her own decisions.

Propounder testified at the hearing held before the probate court that Testatrix was independent and had a sharp mind. She also submitted to the court the written interrogatories of the witnesses to Testatrix's will, who stated under oath that the formalities of will execution were complied with, that Testatrix voluntarily executed the will, and that Testatrix appeared to be of sound mind at the time of execution. Moreover, Propounder submitted a prior will of Testatrix that was executed in 1986 and which was substantially the same as the 1996 will that was offered for probate. The only difference is that Propounder's mother was the primary beneficiary under the 1986 will with Propounder becoming the beneficiary if her mother was deceased. Propounder's mother died in June 1996, and Testatrix changed her will thereafter to its present form which has the Propounder as the primary beneficiary with Propounder's descendants taking if she is deceased.

Caveator contends that Testatrix lacked the requisite testamentary capacity at the time of the execution of the will because she suffered from long-term memory loss. He also contends that the will was the product of undue influence on the part of Propounder and her family. The only evidence relied on by Caveator to support his

contention that Testatrix suffered from long-term memory loss is his own self-serving observations of Testatrix and a letter to Propounder from Testatrix's chaplain relating that Testatrix never spoke of any family except Propounder's. Caveator's only argument supporting his allegation of undue influence is that Propounder and her family cared for and spent a lot of time with Testatrix during the last decades of her life, thus creating the possibility of undue influence. However, "[e]vidence that shows no more than an opportunity to influence and a substantial benefit falls short of showing the exercise of undue influence. [Cit.]" *Sims v. Sims*, 265 Ga. 55 (452 SE2d 761) (1995). Moreover, from such evidence, one may also conclude that Propounder and her family were devoted to Testatrix and that Caveator was absent from her life, thus explaining why the chaplain only knew of Propounder's family and why Caveator was excluded from the will. Sitting as the trier of fact, the probate court had the responsibility to sift through the evidence and issue its factual findings, and "[i]n the absence of any transcript of the hearing, we must assume that the evidence . . . supported these findings of fact. [Cit.]" *Brown v. Fokes Properties 2002*, 283 Ga. 231, 232 (1) (657 SE2d 820) (2008). Finally, there are ample factual findings in the court's order to support its conclusion that Testatrix had the requisite testamentary capacity at the time of the execution of her will. Accordingly, the order of the probate court should be affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 9, 2012 —
RECONSIDERATION DISMISSED FEBRUARY 6, 2012.

Phillip H. Parker, *pro se.*
G. *Roger Land*, for appellee.